**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*State ex rel. DeMora v. LaRose,* **Slip Opinion No. 2022-Ohio-2173.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-2173

THE STATE EX REL. DEMORA ET AL., *v.* LAROSE ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it**
**may be cited as *State ex rel. DeMora v. LaRose,***
**Slip Opinion No. 2022-Ohio-2173.]**

*Mandamus—Elections—Prospective candidates who filed a declaration of*
*candidacy and petition 90 days before the August 2, 2022 primary election*
*and those who filed a declaration of intent to be a write-in candidate 72*
*days before the August 2 primary election have met the candidacy-filing*
*deadlines under R.C. 3513.05 and 3513.041, respectively, and shall be*
*certified to the August 2 primary-election ballots if they otherwise qualify—*
*The secretary of state has no clear legal duty to create a new filing deadline*
*for prospective candidates to the August 2 primary election—Writ granted*
*in part and denied in part.*

(No. 2022-0661—Submitted June 16, 2022—Decided June 24, 2022.)

IN MANDAMUS.

_____

**Per Curiam.**

## I. INTRODUCTION

{¶ 1} This expedited election case arises out of the efforts of eight prospective candidates to the August 2 primary-election ballot. Relators William DeMora, Anita Somani, Elizabeth Thien, Leronda Jackson, Bridgette Tupes, and Gary Martin ("the original relators"), filed declarations of candidacy in May of this year to appear on the August 2 ballot as a candidate for a partisan nomination, as a candidate for a political-party central committee, or as a write-in candidate. And intervening relators, Shafron Hawkins and Mehek Cooke ("the intervening relators"), filed declarations of candidacy and petitions in June of this year to run for partisan nominations for the Ohio House of Representatives.

{¶ 2} In Directive 2022-34, respondent Ohio Secretary of State Frank LaRose instructed the county boards of elections that any candidate declarations filed after February were untimely and should be rejected. The original relators brought this action seeking a writ of mandamus to compel Secretary LaRose to instruct respondents Franklin, Montgomery, and Licking County Boards of Elections to accept (1) any declarations of candidacy that were filed before 4:00 p.m. on May 4, 2022, that are otherwise valid and (2) any declarations of intent to be a write-in candidate that were filed before 4:00 p.m. on May 23, 2022, that are otherwise valid and to certify their candidacies to the August 2 primary-election ballot.

{¶ 3} For the reasons set forth herein, we grant the writ of mandamus requested by the original relators. In addition, we order the boards to accept the declarations and petitions and to certify the candidates to the ballot *if they satisfy the other requirements for ballot access*.

{¶ 4} The intervening relators seek a writ of mandamus compelling Secretary LaRose to rescind Directive 2022-34 and extend the deadline to file declarations until 4:00 p.m. on the tenth day after this court's decision in this matter

and to order respondents Franklin County and Cuyahoga County Boards of Elections to certify their candidacies to the August 2 ballot. Alternatively, they seek a writ of mandamus compelling Secretary LaRose to postpone the August 2 primary "until September 6, at the earliest" to allow time for prospective candidates to file their declarations. For the reasons set forth herein, we deny the intervening relators' request for a writ of mandamus.

## II. OHIO REDISTRICTING AND THE 2022 PRIMARY ELECTION

### A. Filing deadlines for the May 3, 2022 primary election

{¶ 5} The General Assembly set May 3 as the date for Ohio's 2022 primary election. R.C. 3513.05 provides that a person who wishes to become a candidate for a party nomination at a primary election or for election to an office or position to be voted for at a primary election must file a declaration of candidacy and petition no later than "the ninetieth day before the day of the primary election." Therefore, the deadline to file declarations of candidacy for the May 3 partisan primary was February 2. Prospective write-in candidates for elective office must submit a declaration of candidacy no later than "the seventy-second day preceding the election." R.C. 3513.041. With respect to the May 3 primary, the deadline for write-in candidates was February 22.[1]

### B. The first General Assembly–district plan

{¶ 6} Under Ohio law, 2021 was a redistricting year. In November 2015, Ohio voters approved an amendment to the Ohio Constitution that established a new process for creating General Assembly districts. The amendment created a

---

1. The 72nd day, February 20, 2022, fell on a Sunday. February 21, the third Monday in February, was a legal holiday. *See* R.C. 1.14(C). The deadline was therefore extended by statute to the next business day. R.C. 1.14.

seven-member Ohio Redistricting Commission[2] to draw the boundaries of the 99 state House of Representatives districts and the 33 state Senate districts. Ohio Constitution, Article XI, Section 1(C). The Constitution requires the commission to "attempt" to draw a General Assembly–district plan "that meets all of the following standards":

> (A) No general assembly district plan shall be drawn primarily to favor or disfavor a political party.
> (B) The statewide proportion of districts whose voters, based on statewide state and federal partisan general election results during the last ten years, favor each political party shall correspond closely to the statewide preferences of the voters of Ohio.
> (C) General assembly districts shall be compact.

Article XI, Section 6.

{¶ 7} The commission adopted its first General Assembly–district plan in September 2021 ("Map 1"). On January 12, 2022, we held that Map 1 was invalid because the commission did not comply with the standards set out in Article XI, Section 6. *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-65, ___ N.E.3d ___, ¶ 135 ("*League I*"). We instructed the commission "to adopt a plan in conformity with the Ohio Constitution." *Id.*

### *C. Map 2 and the February 2 filing deadline*

{¶ 8} As the February 2 deadline to file declarations of candidacy for a partisan-primary election approached, the General Assembly enacted, and Governor Mike DeWine signed, 2022 Sub.H.B. No. 93 ("H.B. 93"). The bill

---

2. The commission consists of the governor, the state auditor, the secretary of state, and one appointee each by the Speaker of the House of Representatives, the House minority leader, the Senate president, and the Senate minority leader. Ohio Constitution, Article XI, Section 1(A).

addressed the problem that would arise if candidates whose home districts at the time they filed their declarations of candidacy were not the same under a revised map adopted by the commission. *See id.* at Section 4. Specifically, the bill established that a declaration of candidacy for the House, Senate, or a state central committee would not be invalid solely because it lacked a district number or included an incorrect district number, so long as the declarant took certain steps to correct the information. *Id.* at Section 4(C)(1). With respect to filing deadlines, the bill authorized the secretary of state to adjust any deadlines pertaining to the May 3 primary *except* for four specified deadlines, one of which was "[t]he deadline to file a declaration of candidacy, declaration of candidacy and petition, or declaration of intent to be a write-in candidate." *Id.* at Section 4(G)(1).

{¶ 9} On January 22, 2022, the commission adopted its first remedial General Assembly–district plan ("Map 2"). On February 7, we held that the commission had again violated Article XI, Section 6 and invalidated Map 2 "in its entirety." *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-342, ___ N.E.3d ___, ¶ 67 ("*League II*"). We again ordered the commission to adopt a new plan. *Id*. at ¶ 68.

### D. Map 3 and the February 22 filing deadline

{¶ 10} There was no General Assembly–district plan in place on February 22, the deadline for prospective write-in candidates to submit a declaration of candidacy.

{¶ 11} The commission approved a new plan on February 24 ("Map 3"). Secretary LaRose instructed the county boards of elections to certify the candidacies of prospective House, Senate, and state-central-committee candidates who had filed declarations by the February 22 deadline, based on Map 3. *See* Secretary of State Directive 2022-28, Ballots and Candidates for May 3, 2022 Primary Election for All Offices, available at https: // www.ohiosos. gov/

globalassets/ elections/ directives/ 2022/dir2022-28.pdf#page=1 (accessed June 19, 2022) [https:// perma.cc/ 57YZ-JWMS].

{¶ 12} On March 16, we invalidated Map 3. *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-789, ___ N.E.3d ___, ¶ 2 ("*League III*"). Once again, we ordered the commission to reconvene and adopt a new plan. *Id*. The next day, Secretary LaRose issued Directive 2022-30, instructing county boards not to "alter[] or send[] ballots" until they received further direction. Secretary of State Directive 2022-30, *League of Women Voters of Ohio et al. v. Ohio Redistricting Commission, et al.* Decision and Additional Instructions, available at https://www.ohiosos.gov/globalassets/ elections/directives/2022/dir2022-30.pdf#page=1 (accessed June 19, 2022) [https://perma.cc/7WGD-QE8P].

{¶ 13} On March 23, Secretary LaRose issued Directive 2022-31. The directive declared that in light of *League III*'s invalidation of Map 3, "it is not possible to include the primary contests for the Ohio House, Ohio Senate, and State Central Committee on the May 3 Primary Election ballot." Secretary of State Directive 2022-31, Revised Form of Ballot for the May 3, 2022 Primary Election, available at https://www.ohiosos.gov/globalassets/elections/directives /2022/ dir2022-31.pdf#page=1 (accessed June 19, 2022) [https://perma.cc/BX6V-ARBK]. The directive instructed the boards to proceed with preparations for the May 3 primary without those offices appearing on the ballot.

### *E. Map 4*

{¶ 14} On March 28, the commission adopted a new General Assembly–district plan ("Map 4"). *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-1235, ___ N.E.3d ___, ¶ 2 ("*League IV*"). On April 14, we invalidated Map 4 "in its entirety," *id*. at ¶ 78, and ordered the commission to approve and submit a new district plan by May 6, *id*. at ¶ 79.

### F. The readoption of Map 3

{¶ 15} On May 5, the commission readopted Map 3, purportedly for use only in the 2022 election. *League of Women Voters v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-1727, ___ N.E.3d ___, ¶ 3 ("*League V*"). On May 25, we again invalidated Map 3 and ordered the commission to submit a new plan by June 3. *Id*. at ¶ 5-6. The commission has yet to submit a new plan.

### G. The federal court reinstates Map 3, and the secretary of state issues Directive 2022-34

{¶ 16} Meanwhile, in February 2022, a group of Ohio Republican voters and activists sued the commission and Secretary LaRose in federal court, complaining that they had no legislative districts in which to organize, campaign, and vote. *Gonidakis v. LaRose*, ___ F.Supp. ___ , U.S. Dist. LEXIS 72172 (S.D.Ohio 2022). On April 20, a three-judge federal-court panel found, at the preliminary-injunction stage, that the plaintiffs were "likely to establish a violation of their rights if Ohio fails entirely to hold a state-legislative primary election." *Id*. at ___, U.S. Dist. LEXIS 72172 at *49. The panel majority announced that if Ohio did not pass a new General Assembly–district plan that satisfied federal law by May 28, then the panel would order the primary election for General Assembly races to be moved to August 2 and would order Ohio to use Map 3 for the 2022 election cycle. *Id*. at ___, U.S. Dist. LEXIS 72172 at *8-9.

{¶ 17} On May 27, the federal panel issued the following order: "Assuming no map is approved by midnight on Saturday, May 28, we order Secretary of State Frank LaRose to push back Ohio's state primaries to August 2, 2022, and to implement Map 3 for this year's elections *only*." (Emphasis sic.) *Gonidakis v. LaRose*, S.D.Ohio No. 2:22-cv-0773, 2022 U.S. Dist. LEXIS 95341, *5 (May 27, 2022).

{¶ 18} As of May 28, when the federal panel's order imposing Map 3 took effect and set the primary for August 2, there were only 66 days until the primary.

On that date, Secretary LaRose issued Directive 2022-34 to set out a new, compressed elections calendar. The directive stated:

> The federal court order did not alter the partisan candidate filing deadlines for the primary election. The filing deadline for candidates for State Representative, State Senator, or Member of State Central Committee to file a declaration of candidacy was 4:00 p.m. on February 2, 2022. Write-in candidates for the primary election were required to file their declaration of intent to be a write-in candidate by February 22, 2022. If a declaration of candidacy or declaration of intent to be a write-in candidate was filed after those filing deadlines, the board must reject the candidacy.

(Footnotes omitted.) Secretary of State Directive 2022-34, Instructions for the August 2, 2022 Primary Election, available at https:// www.ohiosos. gov/ globalassets/ elections/ directives/ 2022/ dir2022-34.pdf#page=1 (accessed June 19, 2022) [https://perma.cc/U6NW-HJ3D].

### III. THE ORIGINAL RELATORS' DECLARATIONS OF CANDIDACY

#### A. *The prospective state Senate candidates (Thien and DeMora)*

{¶ 19} Under Map 2, Thien resided in Senate District 16; that seat was not up for election in 2022. Accordingly, she did not file a declaration of candidacy in February. But under Map 3, Thien resides in Senate District 25. On May 16, she filed a declaration of candidacy and petition to run as a write-in candidate for the Democratic nomination for Senate District 25.

{¶ 20} DeMora filed a declaration of candidacy and petition on May 4 for the Democratic nomination for Senate District 25. Under Map 2, DeMora resided in Senate District 15, which already had an incumbent Senate Democrat, but Map 3 moved DeMora to District 25.

### B. The prospective Democratic House candidates (Somani and Jackson)

{¶ 21} Under Map 2, Somani resided in House District 11, as did House Minority Leader Allison Russo. Map 3 moved Russo to District 7, leaving District 11 without a declared candidate. On May 4, Somani filed her declaration of candidacy and petition for the Democratic nomination for House District 11.

{¶ 22} On May 23, Jackson filed a declaration and petitions to run as a write-in candidate for the Democratic House nomination in District 39.

### C. The prospective central-committee candidates (Tupes and Martin)

{¶ 23} On May 4, Tupes filed a declaration of candidacy and petition to be a candidate for the Democratic Party State Central Committee for Senate District 15 at the August 2 primary. Also on May 4, Martin filed a declaration of candidacy and petitions to be a candidate for the Democratic Party State Central Committee for Senate District 20 at the August 2 primary.

{¶ 24} The original relators do not identify a specific date on which the boards rejected their declarations and petitions as untimely. However, it is clear from the pleadings that the boards did follow Directive 2022-34 issued by Secretary LaRose and rejected the declarations and petitions as untimely.

### D. The prospective Republican House candidates (Cooke and Hawkins)

{¶ 25} On June 7, Cooke submitted a declaration of candidacy and petition to run for the Republican nomination for House District 11. The Franklin County Board of Elections rejected her declaration and petitions as untimely, based on the secretary's instructions in Directive 2022-34.

{¶ 26} On February 22, Hawkins filed a declaration of intent to run as a write-in candidate for the Republican nomination for House District 15. However, on March 4, Hawkins withdrew his declaration of intent and ran for a congressional seat instead. He appeared on the May 3 congressional-primary ballot but did not win the Republican nomination. On June 3, Hawkins informed the Cuyahoga County Board of Elections of his intent to "reinstate" his candidacy for Ohio House

District 15. The board rejected his request, stating that it did not have a mechanism by which to reinstate his declaration.

### E. The mandamus action

{¶ 27} On May 31, 2022, the original relators filed a petition for a writ of mandamus. They allege that their declarations of candidacy and petitions were timely filed based on the deadlines established by R.C. 3513.05 and 3513.041 and that Directive 2022-34 compels the boards to reject their filings in violation of the law.

{¶ 28} We imposed an expedited briefing schedule, 166 Ohio St.3d 1521, 2022-Ohio-1830, ___ N.E.3d ___, and the original relators and respondents submitted evidence and briefs. On June 10, the intervening relators filed a motion for leave to intervene, which we granted. *See* ___ Ohio St.3d ___, 2022-Ohio-1995, ___ N.E.3d ___. We denied the original relators' motion for leave to file a new reply brief. ___ Ohio St.3d ___, 2022-Ohio-2019, ___ N.E.3d ___. Secretary LaRose and the Franklin County and Cuyahoga County Boards of Elections filed briefs and evidence in opposition to the intervening relators' claims. On June 15, the intervening relators filed a reply brief, at which point the case became ripe for decision.

## IV. LEGAL ANALYSIS

### A. Standard of review

{¶ 29} To be entitled to a writ of mandamus, the original relators and the intervening relators must establish by clear and convincing evidence that (1) they have a clear legal right to the requested relief, (2) Secretary LaRose and the boards have a clear legal duty to provide it, and (3) they do not have an adequate remedy in the ordinary course of the law. *See State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 13. As to the third element, the original relators and the intervening relators lack an adequate remedy in the ordinary course of the law due to the proximity of the primary election, which is

less than 60 days away. *See State ex rel. West v. LaRose*, 161 Ohio St.3d 192, 2020-Ohio-4380, 161 N.E.3d 631, ¶ 15.

{¶ 30} The first two elements require us to determine whether Secretary LaRose or the boards engaged in fraud, corruption, or abuse of discretion or acted in clear disregard of applicable law. *See State ex rel. Lucas Cty. Republican Party Executive Commt. v. Brunner*, 125 Ohio St.3d 427, 2010-Ohio-1873, 928 N.E.2d 1072, ¶ 9. Neither the original relators nor the intervening relators have alleged fraud or corruption. They allege that the issuance of Directive 2022-34 constituted "an abuse of discretion and/or * * * clear disregard of applicable law" by the secretary of state. "An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable attitude." *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997).

### B. The original relators' claims

#### 1. The filing deadlines are set by the Revised Code

{¶ 31} R.C. 3513.05 provides that candidates for partisan nomination in a primary election must file their declaration of candidacy and petition "no[] later than four p.m. [on] the ninetieth day before the day of the primary election." The 90th day before the August 2 primary fell on May 4. R.C. 3513.041 requires prospective write-in candidates to file their declaration "before four p.m. of the seventy-second day preceding the election at which such candidacy is to be considered." The 72nd day before the August 2 primary fell on May 22, which was a Sunday. The original relators argue that those deadlines should apply and, therefore, the four declarations that were filed on May 4 and the declarations for write-in candidacy that were filed on May 16 and May 23 were timely.

{¶ 32} Because this case involves a question of statutory interpretation, our analysis begins with the language of the statute. *See In re Application Seeking Approval of Ohio Power Co.*, 155 Ohio St.3d 326, 2018-Ohio-4698, 121 N.E.3d 320, ¶ 29. Both R.C. 3513.05 and 3513.041 tie the deadline for filing declarations

of candidacy to the actual day when voting occurs.  By the plain language of the statute, then, the filings from the original relators were timely.

{¶ 33} Secretary LaRose concedes this point as a general rule, writing in his merit brief that he

> recognizes that a change in the primary election date *could* operate to re-open the filing period under certain circumstances. Indeed, the Secretary's office acknowledged (in other litigation) that the statutory deadlines are tied to the date of the primary election and can move by operation of law when the date changes.

(Emphasis sic.)  However, Secretary LaRose contends that this general rule should not apply to the specific facts of this case.

{¶ 34} Secretary LaRose argues that the original relators' declarations are void because when they were filed in May, there was no primary election scheduled for August 2.  August 2 was not the primary date until May 28, when the federal court's order imposing that date became effective.  Secretary LaRose asserts that "[a] person cannot file a valid declaration of candidacy and petition for an election date that does not legally exist."  However, Secretary LaRose cites no authority—statutory or judicial—for the proposition that a declaration of candidacy is void if it is filed before the primary date is officially set.  We reject this contention.

{¶ 35} Alternatively, Secretary LaRose suggests in his merit brief that R.C. 3513.05 and 3513.041

> make clear that the filing window would have re-opened if the primary election date was changed to a date more than 90 days out. But those statutes do not contemplate the unusual situation here,

12

> where a court ordered the Secretary to "push back" the election to a
> date that is less than 90 days away.

Secretary LaRose accuses the original relators of adding words to the statute that are not there. Secretary LaRose may be correct that in drafting these statutes, the General Assembly did not contemplate a situation in which the primary would be scheduled less than 90 days before it was to occur, but he is incorrect that this fact compels a different result under the statute. By its plain language, the statute says that the filing deadline for partisan-primary candidates is 90 days before the primary. To read the statute to say that that deadline applies only to certain primaries, depending on when they are formally scheduled, we would have to add words to the statute. And it is settled that if the statutory language is clear and unambiguous, a court will apply the statute as written and will not add or delete words. *In re N.M.P.*, 160 Ohio St.3d 472, 2020-Ohio-1458, 159 N.E.3d 241, ¶ 21.

{¶ 36} In *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 586, 651 N.E.2d 995 (1995), we stated that "when an election statute is subject to two different, but equally reasonable, interpretations, the interpretation of the Secretary of State, the state's chief election officer, is entitled to more weight." In his merit brief, Secretary LaRose relies on this statement to suggest that we should defer to his construction of the deadline statutes. But our reliance on an administrative construction of a statute applies only when the statute is "truly ambiguous." *State ex rel. Ferrara v. Trumbull Cty. Bd. of Elections*, 166 Ohio St.3d 64, 2021-Ohio-3156, 182 N.E.3d 1142, ¶ 21; *see also* R.C. 1.49(F). In this case, Secretary LaRose has not identified an ambiguity in the statutory language that requires interpretation. *See Wayt v. DHSC, L.L.C.*, 155 Ohio St.3d 401, 2018-Ohio-4822, 122 N.E.3d 92, ¶ 15 (when a statute is plain and unambiguous, a court will apply the statute as written, and no further interpretation is necessary).

{¶ 37} The plain language of R.C. 3513.05 and 3513.041 supports relators' claims. Secretary LaRose has offered no compelling reason to disregard the statutory language.

*2. The original relators do not seek*

*to compel Secretary LaRose to set new deadlines*

{¶ 38} Next, Secretary LaRose asserts that the original relators are seeking to compel him to retroactively reopen the filing period. He argues that he does not have the authority to do so, noting that H.B. 93 expressly circumscribed his authority to set new deadlines for the primary. Secretary LaRose's argument misconstrues both the language of H.B. 93 and the relief the original relators seek.

{¶ 39} Section 4(G) of H.B. 93 authorized the secretary to adjust "any deadlines pertaining to the administration of the May 3, 2022, primary election," other than those expressly identified therein. And Secretary LaRose correctly notes that among the deadlines excluded from his authority to adjust were those for filing declarations of candidacy, petitions, and declarations of intent to be a write-in candidate, *see* H.B. 93, Section 4(G)(1). But the language in H.B. 93 makes plain that the law applied to deadlines *only* for the primary election *held on May 3, 2022*. This intent is clear from the language of Section 4(G), which states that the secretary could adjust deadlines as he deemed necessary "to accommodate the shorter timeframe to prepare to hold the election on May 3, 2022." In other words, unlike R.C. 3513.05 and 3513.041, which are not tied to any specific election date, the provisions of H.B. 93 apply only to preparations for a primary election on one specific date (May 3), and they became inapplicable once the federal court changed the date of the primary election for General Assembly and state-central committee candidates or nominations.

{¶ 40} H.B. 93 is inapplicable for a second reason. The original relators are not asking Secretary LaRose to order a new deadline for filing declarations (unlike the intervening relators who are making that demand). Their theory is that the

14

deadlines exist by statute and Secretary LaRose interfered with those statutory deadlines when he issued Directive 2022-34. In other words, the remedy the original relators seek is not an order from Secretary LaRose *setting* new deadlines, but an order compelling his adherence to the deadlines that exist by operation of law.

{¶ 41} Secretary LaRose argues that the federal court in *Gonidakis*, S.D.Ohio No. 2:22-cv-0773, 2022 U.S. Dist. LEXIS 95341, although aware of the statutory deadlines, ordered the partisan-primary election for the General Assembly and state-central-committee nominations to be held on August 2 but that "[n]otably, the panel's order did not discuss re-opening the filing periods." According to Secretary LaRose, the *Gonidakis* panel relied on a statement from the deputy attorney general that the candidate-filing deadlines would not reopen. This argument assumes that the establishing of the candidate-filing deadlines required some affirmative act by the federal court, when in fact they are set by operation of the statutes.

*3. Our ruling need not disrupt the election*

{¶ 42} Finally, Secretary LaRose argues that we should not grant relief, because doing so will "endanger the orderly conduct of the August 2 primary election." Secretary LaRose invokes a principle outlined in *Purcell v. Gonzalez*, 549 U.S. 1, 127 S.Ct.5, 166 L.Ed.2d 1 (2006), as an argument against granting relief in this case. *Purcell* stands for the proposition that, ordinarily, courts should not grant injunctive relief altering election rules close to an election. *See Ohio Democratic Party v. LaRose*, 2020-Ohio-4664, 159 N.E.3d 852, ¶ 82 (10th Dist.), citing *Purcell* at 4-5.

{¶ 43} *Purcell*'s application to this case is questionable, at best, for procedural and substantive reasons. As noted, *Purcell* forbids *injunctive* relief in certain election cases. But we have never applied *Purcell* to preclude the issuance of a writ of mandamus, which, unlike the test for injunctive relief, requires a

showing of a clear legal right, a clear legal duty, and the absence of an adequate remedy in the ordinary course of the law. *See Bryan v. Fawkes*, 61 V.I. 416, 468-469 (2014) (holding that *Purcell* is inapplicable when the relief sought is not injunctive). Indeed, *Bryan* cited as authority a decision from this court in which we granted mandamus relief in an expedited election case over a dissenting opinion urging us to refrain from acting based on *Purcell*. *Bryan* at 468, *citing State ex rel. Owens v. Brunner*, 125 Ohio St.3d 130, 2010-Ohio-1374, 926 N.E.2d 617.

**{¶ 44}** Even if the *Purcell* principle were to play a role in our analysis of mandamus actions, it would not warrant the denial of a writ of mandamus. *Purcell* stands for the proposition that "[w]hen an election is close at hand, the rules of the road should be clear and settled." *Democratic Natl. Commt. v. Wisconsin State Legislature*, ___ U.S. ___, ___, 141 S.Ct. 28, 30, 208 L.Ed.2d 247 (2020) (Kavanaugh, J., concurring). It follows, then, that the applicability of *Purcell* depends on whether the original relators are attempting to alter or restore the status quo, i.e., the established "rules of the road." Here, rather than altering election rules as Secretary LaRose argues, the original relators seek the secretary of state's adherence to the statutory deadlines. In this circumstance, the *Purcell* principle should not bar a court from requiring the subject of the law here—the secretary of state—to do his duty and follow the law. *See Carson v. Simon*, 978 F.3d 1051, 1062 (8th Cir.2020).

**{¶ 45}** Secretary LaRose contends that the boards cannot modify the ballots before June 17, which is the date on which they must have the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C. 20302, ballots ready for distribution.[3] While we are mindful of the burdens it may place on a few boards to prepare a new ballot after the UOCAVA date has passed, we will not hesitate to order that a wrongly excluded candidate be added to the ballot,

---

3. Ohio has incorporated UOCAVA into state law and requires overseas and absent-service-member ballots to be printed 46 days before an election. *See* R.C. 3509.01(B)(1).

notwithstanding the passage of the UOCAVA date. *See, e.g.*, *State ex rel. Stevens v. Fairfield Cty. Bd. of Elections,* 152 Ohio St.3d 584, 2018-Ohio-1151, 99 N.E.3d 376, ¶ 11 (granting a writ of mandamus 40 days before the election (i.e., after the UOCAVA deadline), ordering that a candidate be placed on the ballot despite the board's complaint that it would be costly to "reprint" the ballots).

{¶ 46} We hold that the original relators' right to have their declarations and petitions reviewed outweighs the burden this may place on the boards.

*4. The original relators are entitled to mandamus relief*

{¶ 47} Despite the complicated history, the original relators' complaint presents a simple question of statutory construction: The deadline to file declarations for partisan nomination in a primary election is 90 days before the election, R.C. 3513.05, or 72 days before the election for write-in candidates, R.C. 3513.041. The primary election date is August 2. All six of the original relators filed their declarations of candidacy and petitions for the August 2 primary within those timeframes. We therefore hold that their declarations and petitions were timely filed. We grant a writ of mandamus directing Secretary LaRose to instruct the boards that the original relators' declarations and petitions were timely filed, and we order the Franklin, Montgomery, and Licking County Boards of Elections to accept the original relators' declarations and petitions as timely and to certify the candidates to the ballot *if* they otherwise qualify.

### C. The intervening relators' claims

{¶ 48} The intervening relators argue, as did the original relators, that maintaining the February filing deadlines for the August 2 primary under Directive 2022-34 is an error of law, and they ask us to order a new 10-day period for candidate filings for the August 2 primary. Alternatively, they ask for an order postponing the primary until at least September 6. However, they have not established that Secretary LaRose has a clear legal duty to undertake either of these actions.

**{¶ 49}** Even if Secretary LaRose acted in clear disregard of the applicable law by instructing the boards to adhere to the February deadlines through Directive 2022-34, it does not follow that Secretary LaRose must create a new filing period. Essentially, the intervening relators are making an equitable argument: enforcing the February filing deadlines would be unfair because doubts about the ultimate shape of the maps precluded them from filing their declarations of candidacy earlier. "But 'subjective principles of equity and fundamental fairness' do not dictate whether a writ of mandamus will issue; instead the question is whether there is a clear legal duty to perform the requested act." *State ex rel. Save Your Courthouse Comm. v. Medina*, 157 Ohio St. 3d 423, 2019-Ohio-3737, 137 N.E.3d 1118, ¶ 43, quoting *State ex rel. Schwaben v. School Emps. Retirement Sys.*, 76 Ohio St.3d 280, 285, 667 N.E.2d 398 (1996).

**{¶ 50}** Because the intervening relators cannot satisfy an essential element of mandamus—the existence of a clear legal duty—we deny their request for a writ of mandamus. The second opinion concurring in part and dissenting in part asserts that allowing one group of prospective candidates to participate in the primary and not the other is arbitrary. But contrary to that characterization, not granting a writ to the intervening relators is appropriate, because they have not established that Secretary LaRose has a clear legal duty to undertake either of the actions that they ask this court to order.

## V. CONCLUSION

**{¶ 51}** We grant a writ of mandamus in favor of the original relators, compelling Secretary LaRose and the Franklin, Montgomery, and Licking County Boards of Elections to accept the original relators' declarations of candidacy and petitions as timely and to certify them to the ballot if they otherwise qualify. We deny the writ of mandamus requested by the intervening relators.

Writ granted in part
and denied in part.

O'Connor, C.J., and Donnelly, Stewart, and Brunner, JJ., concur.

Kennedy, J., concurs in part and dissents in part, with an opinion joined by Fischer, J.

Fischer, J., concurs in part and dissents in part, with an opinion.

DeWine, J., concurs in part and dissents in part, with an opinion joined by Fischer, J.

——————————

**Kennedy, J., concurring in part and dissenting in part.**

{¶ 52} Ohio law set the primary for May 3, 2022. But when no General Assembly–redistricting map was validated, the May 3 primary did not occur for the General Assembly and state-central-committee candidates who met all the statutory petition requirements and the February 2, 2022, filing deadline (or the February 22, 2022, deadline for write-in candidates). The inability of those candidates to stand for election was a direct result of the chaos the majority created by its overreach in the General Assembly–redistricting process. *See League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-65, ___ N.E.3d ___, ("*League I*"); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-342, ___ N.E.3d ___ ("*League II*"); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-789, ___ N.E.3d ___, ("*League III*"); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-1235, ___ N.E.3d ___ ("*League IV*"); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-1727, ___ N.E.3d ___ ("*League V*").

{¶ 53} Enter the federal three-judge panel formed pursuant to 28 U.S.C. 2284. With the Ohio Redistricting Commission and the Ohio Supreme Court at an "impasse," some Ohio voters sought relief in the federal court. *See* Complaint for Declaratory and Injunctive Relief at 3, *Gonidakis v. LaRose*, ___ F.Supp. ___, 2022 U.S. Dist. LEXIS 72172 (S.D.Ohio 2022) (No. 2:22-cv-0773). In granting the relief

sought, the federal panel did nothing more than declare the commission's third map ("Map 3") valid for purposes of the primary and liberate the candidates who were legally qualified to appear on the May 3 primary ballot by setting a date for them to finish the May 3 primary. It did not change what it took to qualify to be a candidate on the ballot, and no one intervened and asked the federal panel to change the qualifications to be named on the ballot.

{¶ 54} The majority properly denies the request for a writ of mandamus of the intervenors, Mehek Cooke and Shafron Hawkins. But the majority improperly grants a writ of mandamus to the relators, William DeMora, Anita Somani, Elizabeth Thien, Leronda Jackson, Bridgette Tupes, and Gary Martin, ordering the respondents, Secretary of State Frank LaRose and the Franklin, Montgomery, and Licking County Boards of Elections, to allow the relators to submit their nominating petitions after the February 2022 deadlines set by statute. But the relators stand in the same position as the intervenors. None of the relators filed legally conforming nominating petitions by the February 2 or February 22 deadlines to have his or her name placed on the May 3 primary ballot. And because the relators did not comply with Ohio law, they have no clear legal right to the relief they seek, and the boards of elections have no clear legal duty to accept their declarations of candidacy and petitions for the split primary.

{¶ 55} Because the majority properly denies the intervenors' petitions for a writ of mandamus but improperly grants a writ of mandamus to the relators, I concur in part and dissent in part.

## BACKGROUND

{¶ 56} To understand this case, one must begin from a vantage point of knowing what happened to some candidates who had lawfully qualified to be on the May 3 primary ballot and understanding what the federal court ordered, effective May 28, 2022. Because of what occurred and what the federal court ordered, the intervenors and the relators have no legal right to have their

20

declarations of candidacy and petitions accepted and reviewed by the boards of elections, and the boards have no legal duty to accept and review the declarations and petitions.

### *What happened to some candidates who lawfully qualified*
### *for the May 3 primary ballot*

{¶ 57} R.C. 3501.01(E)(1) defines "primary election" as follows:

"Primary" or "primary election" means an election held for the purpose of nominating persons as candidates of political parties for election to offices, and for the purpose of electing persons as members of the controlling committees of political parties and as delegates and alternates to the conventions of political parties. *Primary elections shall be held on the first Tuesday after the first Monday in May of each year except in years in which a presidential primary election is held.*

(Emphasis added.)

{¶ 58} By definition, Ohio's primary election had to be held on May 3. Every element of eligibility for the ballot builds from that date. Declarations of candidacy with supporting petitions are due 90 days before May 3. R.C. 3513.05. Those petitions had to be open for public inspection through the 80th day before May 3; the boards of elections were required to verify signatures by the 78th day prior to May 3 and had to permit challenges to those petitions by the 74th day before May 3. *Id.*

{¶ 59} Those candidates running for General Assembly seats or positions on their parties' state central committee faced uncertainty regarding the May 3 primary—the boundaries of their districts were in flux. On January 12, 2022, a majority of this court invalidated the first General Assembly–redistricting plan

adopted by the commission. *League I*, ___ Ohio St.3d ___, 2022-Ohio-65, ___ N.E.3d ___, at ¶ 2. A second redistricting plan was adopted by the commission on January 22, and a majority of this court struck that down on February 7. *League II*, ___ Ohio St.3d ___, 2022-Ohio-342, ___ N.E.3d ___, at ¶ 67-68. A third redistricting plan was submitted to this court on February 25, and a majority of this court struck that down on March 16. *League III*, ___ Ohio St.3d ___, 2022-Ohio-789, ___ N.E.3d ___, at ¶ 2.

{¶ 60} Between the commission's adoption of the second and third redistricting plans, two significant things happened. The General Assembly took action, and some Ohio voters filed a complaint for declaratory and injunctive relief in the United States District Court for the Southern District of Ohio, Eastern Division. *See* Complaint at 3, *Gonidakis*, ___ F.Supp.___, 2022 U.S. Dist. LEXIS 72172 (No. 2:22-cv-0773).

{¶ 61} Anticipating that district lines would change prior to the primary election, the General Assembly passed 2022 Sub.H.B. No. 93 ("H.B. 93") to address the uncertainty regarding the district lines. The governor signed it into law as an emergency measure on January 28, 2022. It left firmly in place the February 2 and February 22 dates for prospective candidates to file their declarations of candidacy for the Ohio House, Senate, and state central committees.

{¶ 62} H.B. 93 authorized candidates who had filed by the February 2022 deadlines to change the district in which they would seek election if they found themselves–after redistricting–living in a district different from the one in which they had declared their candidacy. *Id.* at Section 4(B). H.B. 93 provided the mechanism by which the candidates could change their districts once the district lines were in place for the primary election. *Id.* at Section 4(C).

{¶ 63} The General Assembly never changed the primary date. H.B. 93 remained a bill that addressed a May 3, 2022, primary date.

{¶ 64} H.B. 93 attempted to prevent electoral chaos. With its passage, the General Assembly gave protection to those candidates who were legally qualified to be on the primary ballot. Even with shifting district lines, they would be able to easily change their district if they were drawn out of their original one. Everyone knew that the primary date was not changing and that filing by the February 2 or February 22 deadlines created a safe harbor as long as the candidate had declared his or her candidacy by the applicable date. H.B. 93 became effective on January 28, leaving five days for any prospective candidate to gather the necessary signatures—just 50 for those running for House or Senate and a mere 5 for those running for state central committee, R.C. 3513.05.

{¶ 65} With the commission and a majority of this court at an impasse, there were no General Assembly–district lines drawn in time for the May 3 primary. Without a General Assembly–redistricting plan, candidates whose nominating petitions were submitted by either of the February 2022 deadlines and approved by the boards of elections were severed from the May 3 primary because their districts were undefined. Secretary of State Directive 2022-31, Revised Form of Ballot for the May 3, 2022 Primary Election, available at https:// www.ohiosos. gov/ globalassets/ elections/ directives/ 2022/dir2022-31.pdf#page=1 (accessed June 19, 2022) [https://perma.cc/BX6V-ARBK].

{¶ 66} As a result, Ohio entered uncharted territory with its General Assembly and state-central-committee candidates excised from the scheduled primary ballot. Those excised from the ballot were placed in Dante's first Circle of Hell, Limbo, " 'desiring without hope.' " *The Divine Comedy of Dante Alighieri*, Canto IV, at 18 (Charles W. Eliot, LL.D. ed., Henry F. Cary trans., P.F. Collier & Sons 1909). Although there is no reprieve for those in Limbo in Dante's *Inferno*, there was relief for candidates in Limbo in Ohio—in the form of the federal three-judge panel.

***What the federal court ordered***

**{¶ 67}** The Ohio voters who sought declaratory and injunctive relief in federal court asked that court to "declare that the current state legislative districts (or lack thereof) violate" the United States Constitution, Complaint at 3, *Gonidakis*, ___ F.Supp.___ (No. 2:22-cv-0773), 2022 U.S. Dist. LEXIS 72172, and to declare the second map adopted by the redistricting commission valid for the 2022 election cycle, *id.*

**{¶ 68}** A three-member federal-district-court panel considered what to do if the commission was unable to meet this court's requirements for a General Assembly–district plan. The panel, though wary of acting, was very aware of Ohio's election timelines and decided in an April 20, 2022, order that May 28, 2022, would be the point of no return to announce an election date for those candidates who had been severed from the May 3 primary, *see Gonidakis*, ___ F.Supp. ___, 2022 U.S. Dist. LEXIS 72172, at *8.

**{¶ 69}** The federal panel was aware of the August 2 special election date already instituted by statute. *Id.* Working backwards from the general-election date of November 8, the court concluded that August 2 was the last day to finish the primary because of the deadlines and procedures in place for required reviews prior to the general election. *Id.* at *63-64. When May 28 arrived, the federal panel's order was limited: a simple pushback of the remaining races to August 2 and an implementation of the redistricting commission's third plan.

**{¶ 70}** The federal panel did not set a *new* date for the 2022 primary because, as set forth above, that date was already determined by Ohio statute. The federal panel also did not explicitly or implicitly create new rights for people who never sought candidacy for the May 3 primary. No one intervened in the federal action and asked the federal court to reopen the already closed nominating-petition timelines. Instead, the federal three-judge panel merely closed a chapter of

redistricting impasse and declared Map 3 valid in order for Ohio voters to be able to vote.

{¶ 71} It made clear in its April 20 opinion and order that it wanted to do nothing to jeopardize the general election, the timeline for which was already under pressure due to the incomplete May 3 primary. *See Gonidakis*, ___ F.Supp. ___, 2022 U.S. Dist. LEXIS, at \*4-5. The panel, citing *Purcell v. Gonzalez*, 549 U.S. 1, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006), recognized that "judicial intrusion in elections is dangerous work. Even under the best circumstances—and these are decidedly not those—'[r]unning elections state-wide is extraordinarily complicated and difficult.' " *Gonidakis* at \*55-56, quoting *Merrill v. Milligan*, ___ U.S. ___, ___, 142 S.Ct. 879, 880, ___ L.E.2d ___, (2022) (Kavanaugh, J., concurring). The court recognized the fragility of the election calendar and its interrelatedness. *Id.* at \*64. Based on all the evidence and knowledge of Ohio's election laws, the federal court established that the last date to finish the primary was August 2. *Id.* at \*9-10.

{¶ 72} The panel took a hands-off approach to all aspects of the Ohio election except determining the appropriate map to use and the appropriate date to finish the fractured primary election. As the *Gonidakis* majority wrote, " 'Even seemingly innocuous late-in-the-day judicial alterations to state election laws can interfere with administration of an election and cause unanticipated consequences.' " *Id.* at \*56, quoting *Democratic Natl. Commt. v. Wisconsin State Legislature*, ___ U.S. ___, ___, 141 S.Ct. 28, 31, ___ L.E.2d ___ (2020) (Kavanaugh, J., concurring). "And while we have no choice but to move the primary date, we should disturb state election deadlines and procedures as little as possible." *Id*. at \*63.

{¶ 73} The federal panel protected two classes of Ohioans. First, the panel safeguarded Ohio voters' right to vote for representation in the General Assembly and state central committees from among those candidates that were properly qualified to run for office in the May 3 primary. Second, it preserved the ability of

people who met the prescribed requirements for candidacy for General Assembly and state-central-committee seats in the May 3 primary to stand for election. The relators and intervenors fall into only one of those categories—they are Ohioans who have the ability to vote for representation in the General Assembly and in state central committees. But since the relators and intervenors did not comply with Ohio law and submit nominating petitions by February 2, 2022, (or February 22, 2022, for prospective write-in candidates) the limited order from the federal panel did not breathe new life into their would-be candidacies.

## ANALYSIS

### *No clear legal right or clear legal duty*

{¶ 74} To be entitled to a writ of mandamus, the relators must establish by clear and convincing evidence that (1) they have a clear legal right to the requested relief, (2) the boards of elections and/or the secretary of state have a clear legal duty to provide it, and (3) the relators do not have an adequate remedy in the ordinary course of the law. *See State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 13. A failure to establish any of these elements will result in a denial of the petition for a writ of mandamus. *See Creasy v. Waller*, 1 Ohio St.3d 93, 93-94, 438 N.E.2d 414 (1982).

{¶ 75} The relators have established no clear legal right to the relief they seek. No one intervened in the federal case to ask for an extension of the February 2 or February 22, 2022, deadlines, and the federal court did not extend those deadlines. The federal court's order only designated a map to be used and afforded Ohioans a date to finish the May 3 primary. Only those candidates who had declared their candidacies by February 2 or February 22 and were severed from the May 3 primary ballot have the legal right to be on the August 2 ballot. The relators' opportunity to participate in the primary—regardless of how the redistricting map might end up—ended on February 2 or February 22. By extension, the boards of elections have no legal duty to accept and review the relators' petitions. The

deadlines have come and gone, and the federal court gave no relief from that fact. The fact that legally qualified candidates were severed from the May 3 primary ballot does not create a clear legal right for the relators or the intervenors or impose a clear legal duty on the boards of elections.

{¶ 76} The primary date was set by statute, and that date was May 3, 2022. The federal court set the date of August 2 to give Ohio voters an opportunity to finish the May 3 primary and allow those candidates who were legally qualified to appear on that ballot to stand for election in hopes of obtaining their party's nomination for the general election.

{¶ 77} The relators and intervenors did nothing to preserve their right to participate in the May 3 primary. But the majority allows people who made no effort to become eligible for the primary election to suddenly join the fray because the situation now appears more advantageous for their election. The relators had the ability, like everyone else, to preserve their chance to seek office by complying with the filing rules for the statutorily defined primary election and enjoying the protection of the safe harbor created by H.B. 93. The saving grace of the federal court rightly belongs only to those candidates who put themselves in a position to earn it.

**CONCLUSION**

{¶ 78} None of the intervenors or relators submitted nominating petitions for the May 3, 2022, primary election as required by law. They have no clear legal right to submit nominating petitions now, and the local boards of elections have no clear legal duty to accept nominating petitions now. Therefore, I concur in the majority's judgment denying writs of mandamus to the intervenors, but I dissent from the majority's granting writs of mandamus to the relators.

FISCHER, J., concurs in the foregoing opinion.

_____

27

**FISCHER, J., concurring in part and dissenting in part.**

{¶ 79} Neither original relators, William DeMora, Anita Somani, Elizabeth Thien, Leronda Jackson, Bridgette Tupes, and Gary Martin, nor intervening relators, Shafron Hawkins and Mehek Cooke, are entitled to writs of mandamus, because they cannot demonstrate a clear legal right to the requested relief or a clear legal duty on behalf of any of the respondents, Secretary of State Frank LaRose and the Cuyahoga, Franklin, Licking, and Montgomery County Boards of Elections, to provide it. Therefore, I agree with the majority opinion that intervening relators' petition for a writ of mandamus must be denied. I disagree, however, that a writ of mandamus should issue for original relators. I agree wholly with the first and third separate opinions and join those opinions in full. I write separately because the redistricting madness caused by a majority of this court cannot be overstated. Thus, I respectfully concur in part and dissent in part.

### Down the Rabbit Hole: *League I*, *II*, *III*, *IV*, and *V* create problems for Ohioans

{¶ 80} Have we now finally made it to Wonderland? Ohioans, especially the parties in this case, are now experiencing the chaos that has ensued from this court's incorrect, unconstitutional, and unreasoned interpretation of Ohio Constitution, Article XI, Section 8(C)(1)(a) in *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-65, ___ N.E.3d ___, ¶ 280 ("*League I*") (Fischer, J., dissenting); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-342, ___ N.E.3d ___, ¶ 150-152 ("*League II*") (Fischer, J., dissenting); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-789, ___ N.E.3d ___, ¶ 195 ("*League III*") (Fischer, J., dissenting); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-1235, ___ N.E.3d ___, ¶ 109 ("*League IV*") (Fischer, J., dissenting); and *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-1727, ___ N.E.3d

___¶ 45-46 ("*League V*") (Fischer, J. dissenting). Just as I predicted. *See League III* at ¶ 151 (Fischer, J., dissenting); *League IV* at ¶ 114 (Fischer, J., dissenting); *League V* at ¶ 46 (Fischer, J. dissenting).

{¶ 81} In response to the federal court's order requiring Secretary of State Frank LaRose to set a new August 2, 2022 date for this year's Ohio primary, *Gonidakis v. LaRose*, S.D.Ohio No. 2:22-cv-0773, 2022 WL 1709146, *1 (May 27, 2022), the parties in this case are now attempting to sort out whether there are new filing dates for candidates who wish to run for their parties' nominations in the primary. The answer to the question whether there are new filing dates is not too much unlike an answer to a Mad Hatter riddle—"I haven't the slightest idea." Lewis Carroll, *Alice's Adventures in Wonderland*, 84 (1865), available at https://www.google.com/books/edition/Alice_s_Adventures_in_Wonderland/hW ByX5-c5SIC?hl=en&gbpv=1 (accessed June 23, 2022) [https://perma.cc/TX9S-KEDP]. This state is in this nonsensical situation because the majority opinion in *League I* ignored the plain language of Article XI, Section 8(C)(1)(a), which precludes this court from reviewing a four-year district plan that is adopted pursuant to the impasse procedures in Article XI, Section 8. And though we could have corrected course and turned back, the majority opinions of this court instead proceeded down the proverbial "rabbit hole" with *League II*, *League III*, *League IV*, and *League V*. Now this state is left in this Wonderland-like position fraught with problems—the current case being a prime example. The only clear resolution in this case, at least if we follow long-standing Ohio precedent establishing the standard for granting a writ of mandamus, is that relators' petitions must be denied.

{¶ 82} Neither original relators nor intervening relators can prove a "clear legal right" to the requested relief. The order moving the date of the primary originates from a federal court and not the Ohio General Assembly. That order is not based on any Ohio statute or the duties of any state elections official. And this court, the Ohio Supreme Court, has neither constitutional nor statutory authority to

change the filing deadlines as the majority opinion does today. Even assuming arguendo that the majority opinion is somewhat correct, I believe that the law is ambiguous or at best unclear, and this court does not issue writs of mandamus unless a relator has proven not only that they do not have an adequate remedy at law but also that there is a clear legal right to relief *and* a clear legal duty by a respondent to provide the requested relief. *State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 13; *see also State ex rel. Manley v. Walsh*, 142 Ohio St.3d 384, 2014-Ohio-4563, 31 N.E.3d 608, ¶ 26; *State ex rel. McGarvey v. Zeigler*, 62 Ohio St.2d 320, 321, 405 N.E.2d 722 (1980).

{¶ 83} By issuing the writ of mandamus to original relators, the majority opinion undermines long-standing Ohio law to reach a desired result. I can only hope that this case is the worst of it and that we are not left to fight the Jabberwock without the vorpal sword sometime in the future. *See* Lewis Carroll, *Through the Looking-Glass*, 18-19 (1871), available at https://www.loc.gov/item/42000114/ (accessed June 23, 2022) [https://perma.cc/26SH-YHMU].

### A Mad Tea-Party: original relators and intervening relators do not have a clear legal right to the requested relief

{¶ 84} Original relators and intervening relators challenge Secretary LaRose's Directive 2022-34 instructing county boards of elections to reject candidate declarations filed after February as untimely. While original relators and intervening relators request different forms of legal relief, they base their relief on the same misunderstanding that when the federal court moved the date of the primary, other dates and deadlines related to primary filings were moved too. While I sympathize with the difficulties that original relators and intervening relators have faced in attempting to navigate the everchanging, unconstitutional maze brought on by the majority opinions in *League I*, *II*, *III*, *IV*, and *V*, no relator has demonstrated, by any evidentiary standard—and especially not by clear and

convincing evidence—a clear legal right to the requested relief or a clear legal duty on behalf of respondents to provide it.

{¶ 85} For a writ of mandamus to issue, relators must establish by *clear and convincing evidence* that (1) they have a *clear legal right* to the requested relief, (2) Secretary LaRose or the boards have a *clear legal duty* to provide it, and (3) relators do not have an adequate remedy in the ordinary course of the law. *See Linnabary*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, at ¶ 13. The right to relief must be clear—rights that may exist but are muddled by other issues are not sufficient to sustain an extraordinary writ like a writ of mandamus. *See Manley*, 142 Ohio St.3d 384, 2014-Ohio-4563, 31 N.E.3d 608, at ¶ 26 (right to relief was unclear when the underlying factual question was in dispute); *McGarvey*, 62 Ohio St.2d at 321, 405 N.E.2d 722 (rights were not so clear as to justify the issuance of an extraordinary writ). Therefore, to prevail, any legal right claimed by relators must be clear: unclouded, easy to perceive and understand, and free from obscurity or ambiguity, *Webster's Third New International Dictionary* 419 (2002) (defining the adjective "clear").

{¶ 86} Additionally, a writ of mandamus will issue if we determine that Secretary LaRose or the boards of elections engaged in fraud, corruption, or abuse of discretion by acting in a manner that "connotes an unreasonable, arbitrary, or unconscionable attitude," *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997), or acted in clear disregard of applicable law. *State ex rel. Lucas Cty. Republican Party Executive Commt. v. Brunner*, 125 Ohio St.3d 427, 2010-Ohio-1873, 928 N.E.2d 1072, ¶ 9. Original relators and intervening relators made no allegations of fraud or corruption, so those subjects are not at issue. Thus, original relators and intervening relators must prove by clear and convincing evidence that Secretary LaRose's Directive 2022-34 constituted an abuse of discretion or was done in clear disregard of applicable law. However,

because of the ambiguity and chaos surrounding the facts and law that govern this case, this cannot and has not been done.

{¶ 87} The issue before us is whether the filing deadlines prescribed by R.C. 3513.05 and 3513.041 moved when *the federal court* ordered *the secretary of state* to "push back Ohio's state primaries to August 2, 2022" from May 3, 2022. *Gonidakis*, 2022 WL 1709146 at *1. But before we get into issues of statutory interpretation, we need to acknowledge the elephant in the room—the question whether the secretary of state even has the authority to do what the federal court ordered. In *League IV*, the court acknowledged that "the authority for setting the date for a primary election belongs to the General Assembly, not to the Ohio Supreme Court, the secretary of state, or a federal court." *League IV*, ___ Ohio St.3d ___, 2022-Ohio-1235, ___ N.E.3d ___, at ¶ 69; *see* R.C. 3501.40 and 3501.01(E)(1). This fact was acknowledged by the federal court in *Gonidakis v. LaRose*, S.D.Ohio No. 2:22-cv-0773, 2022 WL 1175617, *3 (April 20, 2022), noting that the secretary of state has the authority to oversee and implement the election—not to set the primary date. But here we have a writ of mandamus premised on a decision that orders Secretary LaRose to push back the primary date—something that this court expressly determined was not possible. For this court to find that there is a clear legal duty for the secretary of state to accept new filings based on an order that conflicts with our precedent is a bit bonkers.

{¶ 88} But if we assume that the federal court has properly ordered Secretary LaRose to move the primary date, the next question is whether we can even address whether candidate filing deadlines were moved when the primary date was moved, because it appears that issue was already litigated in federal court. This court should first determine whether res judicata or collateral estoppel bars the writ action given that the federal court has already considered the issue of candidate filing deadlines in determining the appropriate remedy for the lack of a legislative map. The federal court contemplated these deadlines in its colloquy with the parties

32

in *Gonidakis*, but it decided not to address the issue in its ruling. Therefore, it is unclear whether this issue is properly before this court or is one that we can even rule on. And, as astutely noted in the first separate opinion, not one of the relators intervened in the federal case to request an extension of the deadlines or clarification of the process if the primary date were to be moved. This fact compounds this already problematic situation.

{¶ 89} However, even presuming that there are no procedural hurdles, the statutory analysis for determining whether R.C. 3513.05 and 3513.041 support moving the filing deadlines for the August 2 primary is not as simple as the majority opinion makes it out to be. The majority opinion concludes that the filing deadlines were changed by operation of law based on the plain language of R.C. 3513.05 and 3513.041, which set forth certain criteria that a candidate must meet before a set number of days before a primary election. Because the primary date changed, the filing deadlines in the statutes necessarily changed as well, under the majority opinion's reasoning. While this may not be an unreasonable reading of R.C. 3513.05 and 3513.041 generally, there are other issues at play here that make the analysis less than clear.

{¶ 90} We must acknowledge that original relators and intervening relators filed their documents well past the filing date for the primary election on May 3, 2022. Secretary LaRose argues that for that reason, the filings are void. The majority opinion deems this fact inconsequential and specifically rejects the void argument because "Secretary LaRose cites no authority * * * for the proposition that a declaration of candidacy is void if it is filed before the primary date is officially set." Majority opinion, ¶ 34. The majority opinion's analysis is wrong because it shifts the burden from relators to respondents. There is a real question about whether these filings are indeed void.

{¶ 91} The General Assembly set the date for the primary as May 3, 2022. That date was the only date that mattered for purposes of R.C. 3513.05 and

3513.041. Indeed, 16 days after this court's decision in *League I*, with bipartisan support, the General Assembly enacted 2022 Sub.H.B. No 93 ("H.B. 93"), modifying the petition requirements for primary candidates and allowing filings to be considered valid even if the petitions were circulated or filed before new district plans were known. H.B. 93 also relaxed requirements regarding the district number, the candidate's residence address, the board of elections with which the documents are filed, the date of the petition signatures, and where the signers resided. *Id.* at Section 4. In relaxing these requirements, the General Assembly gave the secretary of state the authority to adjust certain deadlines but expressly exempted from that authority "[t]he deadline to file a declaration of candidacy, declaration of candidacy and petition, or declaration of intent to be a write-in candidate." *Id.* at Section 4(G)(1). It is obvious that the General Assembly wanted the filing dates for candidates to remain the same, even with the uncertainty of the district lines. The majority opinion peers through the looking glass and turns logic on its head to conclude that those filing dates did not mean anything, because they only applied to the May 3, 2022 primary date. This conclusion is a head scratcher.

{¶ 92} The General Assembly still has not changed the date of the primary. Had the General Assembly wished to change the filing deadlines and provide guidance to Ohioans, would it not have enacted a similar emergency relief bill between this court's decisions in *League II*, *III*, *IV*, and *V*, or between April 20, when the federal court warned the state, *Gonidakis*, 2022 WL 1175617 at *30, and May 27, when the federal court reached its ultimate decision, *Gonidakis*, 2022 WL 1709146 at *1? The General Assembly was well aware that if it did not act on May 28 to either shorten the time it takes to conduct an election or set a new primary date, then the federal court intended to order the new primary to be on August 2, *Gonidakis*, 2022 WL 1175617 at *30. The General Assembly did not act. It is not proper for the majority opinion to assume that the statutory filing deadlines move simply because the federal court set a new primary date, when the General

34

Assembly—the only body with the authority to move the deadlines—has not done so. It is just as probable that the General Assembly intended to keep the filing deadlines the same by enacting a law that forbade the secretary of state from changing those deadlines and not enacting another clarifying law in the midst of this litigation.

{¶ 93} So again, we must ask, why are these petitions not void? The General Assembly certainly did not move the filing deadlines, nor did the General Assembly give the secretary of state the ability to move those deadlines. Those deadlines were the ones that were in place at the time relators filed their petitions, making the petitions untimely. Original relators filed well before the federal court ordered the secretary of state to move the primary. And the order issued by the federal court on May 27 neither created a look-back period nor moved or changed the filing deadlines. So, looking at everything in context, original relators' filings were certainly untimely and could be void. The majority opinion points to no evidence presented by any of relators that would demonstrate an abuse of discretion by the secretary of state or the boards of elections or show that the secretary or boards acted in clear disregard of applicable law. At best, this issue of whether the petitions are void is unclear. The majority opinion's conclusion therefore makes no sense; not only does it improperly shift the burden from relators to respondents to show why these filings are not void, but it provides no rationale for why the filings should be permitted even if the filing-deadline dates moved by operation of law, given that the filings were already untimely.

{¶ 94} Simply put, the relevant statutes and case law and the procedural posture of this case illustrate that neither set of relators can prove a clear legal right to the requested relief or a clear legal duty on behalf of respondents to provide it. Much like a Mad Hatter's tea party, the majority opinion too turns logic and reason on its head by concluding otherwise.

**A Dream This Is Not: the ruling in the majority opinion will disrupt the primary election**

**{¶ 95}** The majority opinion casually dismisses Secretary LaRose's concerns that ruling in favor of relators will disrupt the primary election. The majority opinion alleges that it is mindful of the burden it places on boards and voters to prepare a new ballot after the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C. 20302, deadline has passed but notes that this court previously has not hesitated to order a wrongly excluded candidate to be added to the ballot notwithstanding the passage of that date, citing *State ex rel. Stevens v. Fairfield Cty. Bd. of Elections*, 152 Ohio St.3d 584, 2018-Ohio-1151, 99 N.E.3d 376, ¶ 11. The majority opinion makes this statement without valid support. *Stevens* merely stands for the principle that any financial burden on a board of elections is irrelevant to a laches determination when the relator has acted with reasonable diligence—an issue that is not before this court. It does not stand for the proposition that statutory filing deadlines are not important merely because a candidate may have a right to be on the ballot. Instead, to evaluate this issue, we must look at the principle set forth in *Purcell v. Gonzalez*, 549 U.S. 1, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006) (per curiam), which acknowledges that courts ordinarily should not alter state election laws in the period close to an election, *Democratic Natl. Commt. v. Wisconsin State Legislature*, 141 S.Ct. 28, 30, 208 L.Ed.2d 247 (2020) (Kavanaugh, J., concurring).

**{¶ 96}** "When an election is close at hand, the rules of the road should be clear and settled." *Id.* at 31 (Kavanaugh, J., concurring). To meddle with these laws this late in the game can cause unanticipated consequences. *Id.* Indeed, the third separate opinion identifies many of the consequences that were identified by the secretary of state and places in context the problems with issuing this extraordinary writ so close to the election. This is why these late decisions should be left to the General Assembly—the voice of the people—to sort out, not to this

court. *See id.* at 31 (Kavanaugh, J., concurring). There certainly could be a circumstance when changing the ballot this late in the game is appropriate, but this case is not that one.

{¶ 97} Here, we have numerous relators asking this court to compel the secretary of state and various boards of elections to place relators' names on ballots that have already been printed and sent overseas pursuant to UOCAVA in an election cycle that is contested and fraught with litigation. The primary is less than 40 days away. The ballot process was finalized for a month and Ohioans had some consistency. But now, as explained in detail by the third separate opinion, the majority opinion's order will likely cause these boards of elections to begin procedures again—costing precious resources, including time and money. Are we really going to turn the clocks back and insert chaos, along with some heavy financial burdens, back into the equation, all for a very muddled and unclear legal right asserted by original relators?

{¶ 98} This is exactly the type of case in which the court should exercise judicial restraint to prevent further voter and election-administrator confusion. If we are to follow the majority opinion's logic that the filing deadlines changed by operation of law, who knows what can of worms that opens for other individuals who filed untimely petitions but filed before this new set of deadlines created by the majority opinion. Additionally, there is a clear financial burden and a significant likelihood of confusion that the majority opinion overlooks in reaching its decision. Even if mandamus were appropriate, the *Purcell* principle weighs against issuing a writ, because this case will have far more negative than positive outcomes across all of Ohio. And the consequences of this decision will ensure that we never wake up from this nightmare. This is yet another reason that the writ should not issue.

**Return Home: neither original relators nor intervening relators should be granted a writ of mandamus**

{¶ 99} Unlike Alice, we cannot wake up from this convoluted dream world created by *League I*, *II*, *III*, *IV*, and *V*—the majority opinion ensures that. By granting this writ of mandamus without a clear evidentiary basis, or any clear legal rights or duties, the majority opinion acts in a manner that is not only unconstitutional or extraconstitutional but that is also against the rule of law. It is the antithesis of the rule of law in Ohio for an extraordinary writ of mandamus to be issued on anything less than clear evidence and clear lawful rights and duties. It is unfortunate that this court today issues a writ of mandamus to relators who have not satisfied that clear standard.

{¶ 100} The majority opinion could stop the mayhem. If the majority opinion simply followed the rule of law in Ohio regarding writs of mandamus, the majority opinion would deny the writ and Ohio could wake up and leave Wonderland. Instead, the majority opinion dreams a bit bigger, falls a bit deeper down the rabbit hole, and continues to drag Ohio constitutional, statutory, and case law far beneath their foundational strengths of reason and precedent, all to the long-term detriment of all Ohioans. The only clear answer to this riddled mess is that relators are not entitled to the extraordinary writs they seek. And for that reason, I must respectfully dissent from the majority opinion's judgment issuing a writ of mandamus to original relators.

_____

**DEWINE, J., concurring in part and dissenting in part.**

{¶ 101} The Ohio legislature is responsible for setting the dates of Ohio elections and associated filing deadlines. Ohio Constitution, Article II, Section 27 and Article V, Section 7; R.C. 3501.40. By statute, the legislature set this year's primary election for May 3, 2022. *See* R.C. 3501.01(E)(1). It set February 2, 2022,

as the filing deadline for candidates to the General Assembly to appear on the ballot, and February 22 for write-in candidates.

{¶ 102} 2021 was a redistricting year. *See* Ohio Constitution, Article XI, Section 1(C). For reasons that are no doubt familiar to the reader, Ohio's General Assembly–district map had not been set in time for the statutory primary-election date. This failure to enact state legislative districts in time for an orderly election forced a federal court to intervene and dictate that Ohio hold state legislative elections on August 2, 2022. *Gonidakis v. LaRose*, S.D.Ohio No. 2:22-cv-0773, 2022 U.S. Dist. LEXIS 95341, *5 (May 27, 2022).

{¶ 103} Relators, Williams DeMora, Anita Somani, Elizabeth Thien, Leronda Jackson, Bridgette Tupes, and Gary Martin, and intervenors, Shafron Hawkins and Mehek Cooke, are all prospective candidates who failed to meet the February filing deadlines. They now ask this court to issue an extraordinary writ ordering respondent Secretary of State Frank LaRose and their county boards of elections to certify them to the August primary ballot.

{¶ 104} Neither this court nor the secretary of state has the authority to alter the filing deadlines established by the legislature. Under the Supremacy Clause of the United States Constitution, Article VI, Clause 2, however, a federal-court order moving the filing deadlines would supersede those established by the state legislature. Relators' only hope of a remedy, therefore, is to establish that the federal court's May 27 order moving the legislative primary election also moved the filing deadlines. Nothing in the federal order, though, explicitly purported to move the filing deadlines. For relators to prevail, then, they must clearly establish that the federal order somehow moved the filing deadlines by implication. Because relators have not made this showing, I dissent from the majority's decision to grant them relief.

## I. Background

### *A. An election cycle in flux*

{¶ 105} In Ohio, a seven-member "redistricting commission shall be responsible for" drawing the legislative districts "of this state for the general assembly." Ohio Constitution, Article XI, Section 1(A). Despite the fact that the Constitution assigns the primary role in the redistricting process to the commission, this court has five times invalidated plans adopted by the commission. *See League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-65, ___ N.E.3d ___ ("*League I*"); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-342, ___ N.E.3d ___ ("*League II*"); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-789, ___ N.E.3d ___ ("*League III*"); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-1235, ___ N.E.3d ___ ("*League IV*"); *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, ___ Ohio St.3d ___, 2022-Ohio-1727, ___ N.E.3d ___ ("*League V*").

{¶ 106} This protracted back-and-forth has thrown a wrench in the orderly administration of this year's election cycle. The machinery of an election starts with a long series of statutory deadlines well in advance of "Election Day." See *League IV* for an in-depth account of the "myriad laws that govern elections in Ohio and the constraints that they impose on the timing of elections," *id.* at ¶ 152-153 (DeWine, J., dissenting). Central to this lawsuit are the laws establishing deadlines for individuals to declare their candidacy for offices in the General Assembly and state central committees. To appear on the primary ballot, candidates must file their declarations and petitions 90 days "before the day of the primary election," R.C. 3513.05, and write-in candidates must file 72 days before the day of the primary election, R.C. 3513.041.

{¶ 107} No general or primary election for state legislative office and state central committee can occur without a district map. After the redistricting commission adopted its third plan ("Map 3"), Secretary LaRose directed election officials to begin implementing the plan while a legal challenge was pending in this court. *See* Secretary of State Directive No. 2022-28, at 1. On March 16, this court struck down Map 3, *see League III* at ¶ 2, making it evident that no plan would be finalized in time for the May 3 primary. Thus, Secretary LaRose directed the boards of elections to proceed with the May 3 primary without the races for the Ohio House, Senate, and state central committees. Secretary of State Directive No. 2022-31, at 1.

### B. The legislature adopts emergency legislation to allow candidates to participate in the primary despite the uncertainty as to district lines, provided the candidates meet the February filing deadlines

{¶ 108} In late January, following this court's invalidation of the commission's first redistricting plan, the General Assembly passed bipartisan emergency legislation—2022 Sub.H.B. No. 93 ("H.B. 93")—under the authority granted to it by Article II, Section 1d of the Ohio Constitution. This legislation enabled individuals who had filed prior to the February deadlines to be a candidate in the primary election, even though the districts had not yet been determined. H.B. 93, Section 4. The emergency law instructed prospective candidates to file declarations of candidacy and petitions by the statutory deadlines and allowed for subsequent adjustments necessitated by new district boundaries. In particular, the emergency law relaxed the statutory requirements that declarations of candidacy and petitions contain the correct district number, *id.* at Section 4(B), and the filer's current address, *id.* at Section 4(C), and that the filer live in the district the filer seeks to represent, *id.* at Section 4(D). The emergency law allowed candidates to adjust their declarations of candidacy, but only if they had filed by the statutory deadline. The legislation was explicit that the secretary of state lacked the authority

to adjust the filing deadlines. *Id.* at Section 4(G)(1) ("the Secretary of State may adjust any deadlines pertaining to the administration of the May 3, 2022, primary election" except for (among other things) "[t]he deadline to file a declaration of candidacy, declaration of candidacy and petition, or declaration of intent to be a write-in candidate").

## C. The federal court issues an order that moves only the date for the primary election of state legislative candidates

{¶ 109} On May 27, the United States District Court for the Southern District of Ohio "order[ed] Secretary of State Frank LaRose to push back Ohio's state primaries to August 2, 2022, and to implement Map 3 for this year's elections *only*." (Emphasis in original.) *Gonidakis*, S.D.Ohio No. 2:22-cv-0773, 2022 U.S. Dist. LEXIS 95341, at *5. This exceptional relief was necessary "as a last resort," the federal court explained, "to protect the right to vote." *Gonidakis v. LaRose*, ___ F.Supp. ___, 2022 U.S. Dist. LEXIS 72172, *4 (S.D.Ohio 2022). The United States Constitution, in other words, compelled federal intervention.

{¶ 110} The federal court explained its choice of remedy in terms of timing and map selection. Both were selected to maximize the opportunity for Ohio political actors to fashion their own solution. As for the date, the court noted that under Ohio's statutory scheme, August 2 "is the last practicable date on which to conduct a primary election without disrupting the general election scheduled for November 8." *Id.* at ___, 2022 U.S. Dist. LEXIS 72172 at *6. The panel concluded that using the August 2 election date was "the least disruptive, costly, and confusing way for a federal court to preserve Ohioans' right to vote in primary races required by state law." *Id.* at ___, 2022 U.S. Dist. LEXIS 72172 at *9.

{¶ 111} As to the remedy, the federal court concluded that the least disruptive plan was Map 3. The court explained that "80 of 88 counties in the State had implemented Map 3 when the Ohio Supreme Court rejected that map." *Id.* at ___, 2022 U.S. Dist. LEXIS 72172 at *26. Because the county boards of elections

had already begun implementing Map 3, that plan gave election officials more than a five-week head start over any other plan. *Id.* at ___, 2022 U.S. Dist. LEXIS 72172 at *10-11. In contrast, had the court chosen any other map, April 20 would have been the latest practicable day to begin implementation. *Id.* at ___, 2022 U.S. Dist. LEXIS 72172 at *69 (Map 3 "provides Ohio more than a month of additional time to fashion its own solution"). The court chose Map 3 and August 2 to prioritize "provid[ing] Ohio with the most time * * * while minimizing disruptions and costs in administering the required primary election." *Id.* at ___, 2022 U.S. Dist. LEXIS 72172 at *76-77.

### *D. Relators file an original action*

{¶ 112} Relators DeMora, Somani, Tupes, and Martin each filed declarations of candidacy and petitions on May 4—90 days before August 2. (Relators Thien and Jackson filed to be write-in candidates later in May.) On May 28—one day after the federal court formally ordered an August 2 primary to be conducted using Map 3—Secretary LaRose issued a directive instructing the county boards of elections to reject any declaration of candidacy filed after the original February filing deadlines. Secretary of State Directive No. 2022-34, at 2. "The federal court order did not alter the partisan candidate filing deadlines for the primary election," explained the secretary. *Id.*

{¶ 113} Relators filed a complaint in mandamus three days later, asking this court to order Secretary LaRose and the county boards of elections to certify their names to the August 2 primary ballot. Their theory is straightforward: by filing their declarations and petitions on May 4 (exactly 90 days before August 2) or their write-in-candidate declarations by May 23, relators had complied with their respective deadlines to run as candidates and write-in candidates in the primary.

### II. Analysis

{¶ 114} The relief that relators seek, and that the majority awards—an order that the "chief election officer of the state," R.C. 3501.04, add new names to the

43

ballot—is "extraordinary." *See State ex rel. Dreamer v. Mason*, 115 Ohio St.3d 190, 2007-Ohio-4789, 874 N.E.2d 510, ¶ 11. Relators must establish a clear legal right to their requested relief, a corresponding clear legal duty by respondents to provide that relief, and the lack of a remedy in the ordinary course of law. *Id.*

{¶ 115} It is doubly extraordinary to grant relators' requested relief so close to the election day—39 days as of this writing. Courts are generally loath to intervene in matters of election administration, as intervention risks "unanticipated second, third, and fourth order effects that might undermine the fundamental integrity of Ohio's electoral process." *Giroux v. LaRose*, S.D.Ohio No. 1:22-cv-309, 2022 U.S. Dist. LEXIS 106519, *32 (June 14, 2022). Recent experience confirms that "moving deadlines rarely ends with one court order." *Thompson v. DeWine*, 959 F.3d 804, 813 (6th Cir.2020) (per curiam). "Even seemingly innocuous late-in-the-day judicial alterations to state election laws can interfere with administration of an election and cause unanticipated consequences." *Democratic Natl. Commt. v. Wisconsin State Legislature*, ___ U.S. ___, ___, 141 S.Ct. 28, 31, 208 L.Ed.2d 247 (2020) (Kavanaugh, J., concurring). Judicial intervention on the eve of an election invites voter confusion, which stymies voter participation—the closer to the election, the greater that risk. *Purcell v. Gonzalez*, 549 U.S. 1, 4-5, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006) (per curiam). It is beyond judicial competence to account for these unintended political consequences.

{¶ 116} Thus, the form (mandamus) and substance (late-breaking election intervention) both counsel caution before this court supplants the secretary of state's judgment with its own.

{¶ 117} Against this backdrop, I cannot conclude that relators are entitled to relief. My starting point is Ohio's statutory framework for the election. The General Assembly set this year's primary election for May 3. *See* R.C. 3501.01(E)(1). The deadline to file declarations of candidacy and petitions, February 2 of this year, derives from the primary date—"person[s] desiring to

become a candidate for a party nomination at a primary election * * * shall, not later than four p.m. of the ninetieth day before the day of the primary election, file a declaration of candidacy and petition." R.C. 3513.05; *see also* R.C. 3513.041 (72-day deadline for write-in candidates).

{¶ 118} Relators did not purport to comply with these statutory deadlines. *See* Amended Complaint, ¶ 64, 77, 94, 107, 123, 136. The General Assembly did not adjust the filing deadlines, despite enacting emergency legislation addressing other primary deadlines. *See* H.B. 93. If anything, the emergency legislation supplied prospective candidates notice to file in time for the February deadlines. *Id.* at Section 4. Relators failed to take advantage of the expanded opportunity to run for office that was offered by the emergency law. And Secretary LaRose did not, for he could not, move the filing deadline. *Id.* at Section 4(G)(1). Filing deadlines were among the few dates that the General Assembly expressly prohibited the secretary of state from adjusting "to accommodate the shorter timeframe." *Id.*

{¶ 119} Relators can be entitled to relief *only if* the federal court's order clearly altered the declaration-of-candidacy filing deadline. The federal court did not expressly adjust the deadline to file a declaration of candidacy. The court was careful to limit the relief it ordered to setting the primary date and the applicable General Assembly–district plan. *See Gonidakis*, S.D.Ohio No. 2:22-cv-0773, 2022 U.S. Dist. LEXIS 95341, at *5.

{¶ 120} Relators' position, which the majority adopts, is that the federal court changed the filing deadline *by implication*. I find that conclusion untenable. The federal court's reasoning conclusively refutes the notion. Respectful of "principles of federalism and comity," the federal court adopted a remedy designed around " 'adherence to state policy' " where it " 'does not detract from' " securing Ohioans' right to vote. *Gonidikas*, ___ F.Supp. ___, 2022 U.S. Dist. LEXIS 72172 at *54, *61-62, quoting *White v. Weiser*, 412 U.S. 783, 795, 93 S.Ct. 2348, 37

L.Ed.2d 335 (1973). To that end, the federal court's order, by its terms, "disturb[ed] state election deadlines and procedures as little as possible." *Id.* at \_\_\_, 2022 U.S. Dist. LEXIS 72172 at *63-64 ("we must leave the state electoral process intact as much as we can"). The same motivation—"disrupting Ohio election laws, deadlines, and procedures as little as possible"—accompanied the federal court's selection of Map 3. *Id.* at \_\_\_, 2022 U.S. Dist. LEXIS 72172 at *65.

**{¶ 121}** Its own reasoning, then, gainsays any suggestion that the federal court implicitly altered any provision of Ohio law. The court did not mince words when it said it intended its remedy to minimize disruption.

**{¶ 122}** Aside from the federal court's own representations, principles of federalism counsel that the secretary of state, the chief election officer of Ohio, pursue a narrow, rather than expansive, implementation of the court order. *See Wisconsin State Legislature*, \_\_\_ U.S. at \_\_\_, 141 S.Ct. at 31, 208 L.Ed.2d 247 (Kavanaugh, J., concurring) ("If a court alters election laws near an election, election administrators must first understand the court's injunction"). The Framers of the United States Constitution entrusted state actors to administer elections. *See* U.S. Constitution, Article I, Section IV, Clause 1. The federal court intervened because the United States Constitution guarantees the right to vote. Setting August 2 as the primary-election date and Map 3 as the district plan, the federal court explained, were necessary interventions to vindicate that federal right. But ask yourself if a new filing deadline for candidates is necessary to secure citizens' right to vote. It's not.

**{¶ 123}** The General Assembly, not the federal court, was the appropriate body to provide the relators' requested relief. "It is one thing for state legislatures to alter their own election rules in the late innings and to bear the responsibility for any unintended consequences. It is quite another thing for a federal district court to swoop in and alter carefully considered and democratically enacted state election rules when an election is imminent." *Wisconsin State Legislature* at \_\_\_, 141 S.Ct.

at 31 (Kavanaugh, J., concurring). Only "the requirements of the Federal Constitution," *White*, 412 U.S. at 795, 93 S.Ct. 2348, 37 L.Ed.2d 335, which the candidate-filing deadlines do not implicate, justified federal-court intervention. The federal court's order did not—either expressly or implicitly—move the deadlines to file declarations of candidacy and petitions.

{¶ 124} Relators' counterargument is more simplistic. By moving the primary election, they say, the federal court automatically moved the filing deadline by operation of law. Their sole source of support is that R.C. 3513.05 tethers the deadline to "the day of the primary election." Relators assert that by moving the primary election, the federal court moved the entire election apparatus centered around the primary election. Their position ignores that "the day of the primary election" is statutorily prescribed: "Primary elections shall be held on the first Tuesday after the first Monday in May * * *," R.C. 3501.01(E)(1). The first Tuesday after May 1 is "the day" to which R.C. 3513.05(E)(1) refers.

{¶ 125} Relators did not prove that they are clearly entitled to have their names certified to the August 2 primary-election ballot when they filed their respective declarations of candidacy months after the statutory deadlines. Nor did Ohio's election officials—the secretary of state or respondent boards of elections— have a clear legal duty to fashion that relief. Although I believe the majority badly errs by issuing a writ of mandamus for relators, it correctly denies relief to the intervenors making a similar claim. But one has to wonder about the arbitrariness of allowing one group of candidates who missed the statutory deadlines to participate in the August 2 primary election but not the other.

{¶ 126} Time will tell what damage today's extraordinary order will inflict on this year's already-handicapped election cycle. The majority blithely announces that "our ruling need not disrupt the election." Majority opinion, ¶ 41. But it cites not a shred of evidence to support this assertion. Indeed, the one official with expertise in administering elections—Ohio's Secretary of State— has submitted

testimony to the contrary. The deputy assistant secretary of state and state elections director, Amanda Grandjean, cautioned in a sworn statement that the relief the majority orders

> creates significant, and potentially disastrous, risks to the election administration process and for the local boards of elections that are making their best efforts to administer an additional, unplanned, statewide primary election in 2022 in an accurate and secure manner, under intense scrutiny, on a compressed and expedited timeline.

Grandjean Aff., ¶ 40 (June 8, 2022); *see also Giroux*, S.D.Ohio No. 1:22-cv-309, 2022 U.S. Dist. LEXIS 106519, at *40. Undeterred by these warnings, the majority proclaims that "relators' right to have their declarations and petitions reviewed outweighs the burden this may place on the boards." Majority opinion at ¶ 46. But the burden on election officials is not the issue here; the real concern is the disruption the majority's order will have on the administration of an orderly election. This is not a matter that this court has the institutional competence to determine; rather, it is a political calculation that our laws entrust to the General Assembly.

{¶ 127} The majority is indifferent to the toll its order will take. "[E]lections require enormous advance preparations by state and local officials, and [they] pose significant logistical challenges." *Merrill v. Milligan*, ___ U.S. ___, ___, 142 S.Ct. 879, 880, ___ L.Ed.2d ___ (2022) (Kavanaugh, J., concurring). In Ohio, Director Grandjean reports, once the ballot is finalized, "boards must complete extensive proofing and testing processes to ensure the integrity of the election." Grandjean Aff. at ¶ 35 (June 8, 2002). This onerous process requires county boards of elections to proof voter-registration systems, program election-

management systems, create ballots, preliminarily test the ballots before printing them, double-check voter-registration rolls, and program candidate information into the election-night reporting system consistent with R.C. 3505.27(C) and 3505.33. Boards of elections have already certified candidates based on the February 2 deadline. *See* Secretary of State Directive No. 2022-25, at 3. The court's order will cause affected boards to start many of these procedures from scratch—a "significant, and potentially disastrous" setback. Grandjean Aff. at ¶ 40 (June 8, 2022).

{¶ 128} Understand, too, that declaration-of-candidacy deadlines do not operate in a vacuum. Those provisions are part of a network of interconnected statutory time controls. Through the 80th day before the primary, for example, petition papers containing signatures associated with a declaration of candidacy must "be open to public inspection." R.C. 3513.05. And 78 days before the primary, boards of elections must certify the signatures on candidates' petitions. *Id.* Through the 74th day before the primary, qualified electors may formally protest a candidacy, triggering a hearing before the boards of elections. *Id.* The list goes on: 70 days before the primary, the boards must "certify to each board in the state the forms of the official ballots to be used at the primary election, together with the names of the candidates to be printed on the ballots." *Id.* Today's order uproots not one discrete law but a litany of downstream deadlines that follow the declaration-of-candidacy filing. *See* Grandjean Aff. at ¶ 35 (June 8, 2022). These requirements are compulsory, not permissive. *See* R.C. 3501.40 ("no public official shall cause an election to be conducted other than in the time, place, and manner prescribed by the Revised Code"). Given this reality, I find the majority's unsubstantiated assurance that its ruling will not disrupt the election disconcerting.

{¶ 129} At minimum, the majority's order directly contravenes R.C. 3509.01(B)(1), which prescribes ballot preparation for overseas and absent uniformed-services voters to take place 46 days before the election. Secretary

LaRose, the majority holds, has a clear legal duty to violate the rights of this segment of the population.

{¶ 130} The majority attempts to distract from Secretary LaRose's real-world concerns for *this impending election*—concerns the majority never addresses—by contesting the applicability of the United States Supreme Court's decision in *Purcell v. Gonzalez*, 549 U.S. 1, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006). Majority opinion at ¶ 42. *Purcell*, though, simply stands for the common-sense principle that judges—novices in election administration—should not meddle in elections at the last minute, *id.* at 5-6, because when they do, they are likely to do more harm than good. The important thing for our purposes is not whether *Purcell* formally binds this court, but whether its rationale informs the present situation. Undoubtedly, it does.

{¶ 131} The majority's proffered reasons to ignore the unremarkable teaching of the *Purcell* principle are almost laughable. First, it says, *Purcell* precludes injunctive relief, not mandamus relief. But of course, it never bothers to tell us why that distinction matters. And never mind that in the election context the two remedies function alike. Both are "extraordinary remed[ies]" that "direct[] the conduct of a party," with a court's "full coercive powers." *Nken v. Holder*, 556 U.S. 418, 428, 129 S. Ct. 1749, 173 L.Ed. 2d 550 (2009) (injunction); *see also State ex rel. Ferrara v. Trumbull Cty. Bd. of Elections*, 166 Ohio St.3d 64, 2021-Ohio-3156, 182 N.E.3d 1142, ¶ 7 (mandamus); R.C. 2731.01 (defining mandamus). The factors courts consider for both remedies align, *compare Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008), *with* majority opinion at ¶ 43, and both contain a "discretion[ary]" component "based upon all the facts and circumstances in the individual case," *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 143, 228 N.E.2d 631 (1967), paragraph 7 of the syllabus; *accord Merrill v. Milligan*, ___ U.S. ___, ___, 142 S.Ct. 879, 883, ___ L.Ed.2d ___ (2022),

fn. 1 (Kagan, J., dissenting) (courts "sometimes give[] less attention to the merits in cases involving eleventh-hour election changes").

{¶ 132} Second, the majority flippantly asserts that its interjection into election affairs preserves, rather than erodes, the status quo. But that's simply untrue. Adding new candidates to the ballot at the last minute obviously changes the status quo. Before today, primary ballots were finalized, proofed, and in the case of overseas servicepersons, actually mailed out. *See* Secretary of State Directive No. 2022-34. Today's order disrupts that progress, forcing election officials to try to figure out how to unwind and redo what they have already accomplished. For the majority to claim that its order *altering* the chief election officer's implementation of the election laws "restore[s] the status quo" is nonsensical. Majority opinion at ¶ 44.

{¶ 133} In effectively moving the filing deadline for a chosen group of prospective candidates, the majority does something that it has no authority to do. Neither a federal court order nor a General Assembly enactment sustains the extraordinary relief granted by the majority today. The majority, once again, simply exercises raw political power. *See League IV*, ___ Ohio St.3d ___, 2022-Ohio-1235, ___ N.E.3d ___, at ¶ 130 (DeWine, J., dissenting).

### III. Conclusion

{¶ 134} I respectfully dissent from the part of the court's order that grants relators extraordinary relief. This court has already disrupted the election process by stepping outside of its judicial role and ignoring the limits that the Ohio Constitution places on its authority. In doing so, it foisted a costly and confusing special election on the voters. Today, the court compounds the problems it has created by arbitrarily granting relief to a select group of prospective candidates who failed to comply with the deadlines established by the General Assembly. What a mess.

FISCHER, J., concurs in the foregoing opinion.

---

McTigue, Colombo, & Clinger, L.L.C., Donald J. McTigue, and Derek S. Clinger, for the original relators.

Frankovitch, Anetakis, Simon, DeCapio, & Pearl, L.L.P., and Michael G. Simon, M. Eric Frankovitch, and Carl A. Frankovitch, for the intervening relators.

Shumaker, Loop & Kendrick, L.L.P., Larry J. Obhof Jr., Douglas G. Haynam, and Alia A. Kadri, for respondent Secretary of State Frank LaRose.

William C. Hayes, Licking County Prosecuting Attorney, and Carolyn J. Carnes and Mark W. Altier, Assistant Prosecuting Attorney, for respondent Licking County Board of Elections.

G. Gary Tyack, Franklin County Prosecuting Attorney, Amy L. Hiers, and Andrea C. Hofer, Assistant Prosecuting Attorneys, for respondent Franklin County Board of Elections.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Ward C. Barrentine and Nathaniel S. Peterson, Assistant Prosecuting Attorneys, for respondent Montgomery County Board of Elections.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mark R. Musson, Assistant Prosecuting Attorney, for respondent Cuyahoga County Board of Elections.

---